United States Court of Appeals,

Eleventh Circuit.

No. 94-3521.

GILCHRIST TIMBER CO., C.L. Brice, L.A. Brice, Andy M. Brice, Sam Brice, Plaintiffs-Appellants,

v.

ITT RAYONIER, INC., Defendant-Appellee,

v.

NATURAL RESOURCE PLANNING SERVICES, INC. and Andrew V. Santangini, Third-Party-Defendants.

Sept. 20, 1996.

Appeal from the United States District Court for the Northern District of Florida (No. 88-10172-MMP);  Maurice M. Paul, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LOGAN[*], Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES, AND RULE 9.150, FLORIDA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF FLORIDA, AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that the above-styled case involves a question of state law that is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida.  This court therefore certifies the following question of Florida law to the Supreme Court of Florida for instructions concerning such question of law, based on the facts

---

[*]Honorable James K. Logan, Senior U.S. Circuit Judge for the Tenth Circuit, sitting by designation.

recited herein:

> Whether a party to a transaction who transmits false information which that party did not know was false, may be held liable for negligent misrepresentation when the recipient of the information relied on the information's truthfulness, despite the fact that an investigation by the recipient would have revealed the falsity of the information.

## I. STYLE OF THE CASE

The style of the case in which this certification is made is as follows:  Gilchrist Timber Co., C.L. Brice, L.A. Brice, Andy M. Brice, Sam Brice, Plaintiffs-Appellants, versus ITT Rayonier, Inc., Defendant-Appellee, versus Natural Resource Planning Services, Inc. and Andrew V. Santangini, Third-Party Defendants, No. 94-3521, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Florida.

## II. FACTS

In this diversity action plaintiffs, Gilchrist Timber Company, C.L. Brice, L.A. Brice, Andy M. Brice, and Sam Brice,[1] alleged that defendant ITT Rayonier, Inc. (ITT) made a material false representation of the zoning of a large block of Florida timberland that it sold to plaintiffs, causing them economic injury.  After a jury found in favor of plaintiffs the district court granted defendant judgment notwithstanding the verdict and plaintiffs appealed.

---

[1]The original complaint named as plaintiff Gilchrist Timber Company.  The amended complaint substituted as plaintiffs C.L. Brice, as trustee of the Carl L. Brice 1977 Irrevocable Trust, L.A. Brice, Andy M. Brice, and Sam Brice, individually and doing business as Gilchrist Timber Company, a Florida Partnership. Thereafter Carla Sutton (a/k/a Carla Brice) and David M. Miller, cotrustees of the Carl L. Brice 1977 Irrevocable Trust, joined as plaintiffs.

In 1985, Jimmy Ray Mincy, a timber broker, became interested in purchasing a tract of timberland (the timberland) from defendant. He solicited C.L. Brice, who was involved in timber, ranching and real estate, to join him in making the purchase. Brice and Mincy ultimately purchased the 22,641-acre tract. They presented evidence at trial that they planned to cut and sell the timber and then to sell a significant portion of the land in small tracts for farming or residential development.

Mincy and Brice met with ITT's representatives to discuss purchasing the timberland. Brice testified that at this first meeting Kent Smith, then ITT's Director of Forest Land Management, gave Brice and Mincy a copy of an April 1984 appraisal that ITT had obtained when it decided to sell various timberlands to raise cash. The document included a land appraisal by Andrew Santangini and a timber appraisal by Natural Resource Planning's Tom Mastin. The appraisal stated that the timberland was zoned for agriculture, which allows residential usage. Mincy and Brice testified they decided to buy the timberland only because the zoning allowed residential development. Uncontroverted evidence at trial indicated that the parties never discussed zoning, although the information contained in the timber appraisal—such as the quantity and quality of timber—was discussed at length.

Immediately after the closing, Brice and Mincy conveyed the land and timber to their partnership, Gilchrist Timber Company. More than a year after the purchase, when Gilchrist Timber had removed some timber and attempted to sell some acreage, plaintiffs learned that the vast majority of the timberland was actually zoned

"preservation," a classification permitting no residential use.[2] Brice and Mincy attempted unsuccessfully to change the zoning. Plaintiffs asserted that they could not sell the land as planned and lost the benefit of their bargain. They brought this suit, alleging defendant misrepresented that the land was zoned agricultural.[3] The jury found in favor of plaintiffs and awarded damages of $1,676,500, but the district court granted defendant ITT's motion for judgment notwithstanding the verdict. As relevant to the question we submit the district court found that ITT was itself unaware that the zoning classification stated in the appraisal report was inaccurate, a finding the record supports. Thus this case involved negligent misrepresentation.

### III. DISCUSSION

Plaintiffs argue that under Florida law ITT had a duty to discover the error in the appraisal but plaintiffs had no corresponding duty to determine whether the facts in the appraisal on which they relied were true. Plaintiffs rely on *Besett v. Basnett,* 389 So.2d 995 (Fla.1980). In *Besett,* the buyers of a lodge and property alleged that the sellers knowingly misrepresented the lodge's business history, condition, and acreage. The buyers did not investigate these representations, and

---

[2]The record contains conflicting testimony on exactly how and when plaintiffs discovered the zoning problem.

[3]Defendant ITT brought in as third party defendants Andrew Santangini and Natural Resource Planning, who performed the land and timber appraisals, respectively, asserting a right of indemnity in the event ITT were held liable. Plaintiffs made no direct claims against the third party defendants. The jury found no liability against the third party defendants, and that determination is not part of the appeal to the Eleventh Circuit.

relied on them in deciding to buy the lodge and land. The *Besett* court concluded the buyers had no duty to investigate, although it noted that a purchaser would not be justified in relying on an obviously false representation. Plaintiffs also cite *Lynch v. Fanning,* 440 So.2d 79 (Fla. 1st D.C.A.1983), in which a buyer failed to exercise his contractual right to secure a survey and thus did not discover that the seller's property description was false. That decision held such failure did not eliminate the plaintiff's cause of action. *Id.* at 80 (citing *Held v. Trafford Realty Co.,* 414 So.2d 631 (Fla. 5th D.C.A.1982)).

Defendant contends that other Florida cases limit the holdings of *Besett* and *Lynch.* For example, in *Wasser v. Sasoni,* 652 So.2d 411 (Fla. 3d D.C.A.1995), after closing on an "as is" contract for a commercial apartment building, the buyers found the building needed structural repairs and sued based on both affirmative misrepresentations and failure of the sellers to disclose alleged defects. On buyers' appeal from a grant of summary judgment, the court of appeals held that "an intentional nondisclosure of known facts materially affecting the value of commercial property[ ] is not actionable under Florida law." *Id.* at 412. The court also stated that "[a]ssuming arguendo that false representations had been made, a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence." *Id.* (citing *Steinberg v. Bay Terrace Apartment Hotel,* 375 So.2d 1089 (Fla. 3d D.C.A.1979)). The *Wasser* court characterized *Besett* as an exception—a circumstance in which specific misrepresentations regarding a latent defect were made to a negligent purchaser. It

stated "there is no exception where the parties are equally sophisticated, and have an equal opportunity to discover a defect." *Id.* at 413. *See also David v. Davenport,* 656 So.2d 952, 953 (Fla. 3d D.C.A.1995) (misrepresentation in car sale not actionable if truth could be discovered by ordinary diligence, citing *Wasser*) (dicta); *Adams v. Prestressed Sys., Inc.,* 625 So.2d 895, 897 (Fla. 1st D.C.A.1993) ("[i]n the civil context, a party who relies on a misrepresentation must show that it exercised some diligence in investigating the misrepresentation, unless it is shown that the fraudulent party had exclusive or superior knowledge, or prevented further investigation") (workers' compensation). *But see Sheen v. Jenkins,* 629 So.2d 1033, 1035 (Fla. 4th D.C.A.1993) (jury may find plaintiff justifiably relied upon misrepresentation even if she could have ascertained truth by making an investigation, unless she knows of falsity or falsity is obvious to her) (investment fraud); *Eastern Cement v. Halliburton Co.,* 600 So.2d 469, 471 (Fla. 4th D.C.A.) (in fraudulent misrepresentation claim, buyer under no duty to investigate truth or falsity of statements unless had reason to know of falsity, citing *Besett* ), *review denied,* 613 So.2d 4 (Fla.1992) (sale of cement pumping equipment); *Revitz v. Terrell,* 572 So.2d 996, 998-99 (Fla. 3d D.C.A.1990) (real estate recision action for fraudulent misrepresentation concerning flood insurance and building code violations; recipient may rely on truth of representation even if could have ascertained falsity with an investigation, citing *Besett* ); *Gold v. Perry,* 456 So.2d 1197, 1201 (Fla. 4th D.C.A.1984) (rejecting idea, in intentional fraud case, that a party's business experience and success may be

considered in determining whether reliance justifiable); *cf. Johnson v. Davis,* 480 So.2d 625, 627-28 (Fla.1985) (where seller of home knows of latent defects, duty to disclose if not readily observable or known to buyer).

Obviously *Besett,* as a Florida Supreme Court case, would control if applicable. But we are uncertain whether the court would apply the rule of *Besett* in a negligent misrepresentation case. In *Besett,* the court adopted the *Restatement (Second) of Torts* § 540 (1976), which applied to fraudulent misrepresentations, and which says, "[t]he recipient of a *fraudulent* misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." *Besett,* 389 So.2d at 997 (emphasis added). The reason for this rule is that "[a] person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of caveat emptor." *Id.;  see also Cruise v. Graham,* 622 So.2d 37, 40 (Fla. 4th D.C.A.1993) (fraudulent misrepresentation is an intentional tort, making comparative negligence no defense).

The elements of fraudulent misrepresentation and negligent misrepresentation appear to be the same under Florida law. *See Baggett v. Electrician's Local 915 Credit Union,* 620 So.2d 784, 785 (Fla. 2d D.C.A.1993);  *Thor Bear, Inc. v. Crocker Mizner Park, Inc.,* 648 So.2d 168, 172 (Fla. 4th D.C.A.1994). But it may be that what constitutes "justifiable reliance" for the two claims is different. According to the Florida Supreme Court's standard jury instructions, "[i]t appears that Florida recognizes two separate theories of recovery for damage occurring as a result of

misrepresentation. One basis ... is for fraud and the other is for negligent misrepresentation." *See Standard Jury Instructions—Civil Cases,* 613 So.2d 1316, 1319 (Fla.1993). The standard instructions suggest that only when there is a fraudulent misrepresentation is the recipient "justified in relying upon its truth, even where an investigation might have revealed its falsity." *Id.* (citing *Besett* ).

Also, if *Besett* can be seen as Florida's adoption of the *Restatement (Second)* approach to the law of misrepresentation, it might be important that under the *Restatement (Second) of Torts* § 552A, "[t]he recipient of a negligent misrepresentation is barred from recovery ... suffered in reliance upon it if he is negligent in so relying." This view is consistent with the idea that contributory negligence is a defense to unintentional torts, but not to intentional torts. *See Cruise,* 622 So.2d at 40. On the other hand, *Lynch v. Fanning,* 440 So.2d 79 (Fla. 1st D.C.A.1983), appears to have applied *Besett* 's logic to negligence claims.

Without further guidance from the Florida Supreme Court on the question certified, this court cannot resolve the appeal before us with confidence. Thus, we certify the question stated at the outset of this opinion.

The phrasing employed in the certified question is intended as a guide and is not meant to restrict the Florida Supreme Court's consideration of the issues in its analysis of the record certified in this case. This extends to the Supreme Court's restatement of the issue and the manner in which the answer is given. *See Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The clerk of this court is directed to transmit this certificate, as well as the briefs and record filed with the court, to the Supreme Court of Florida and simultaneously to transmit copies of the certificate to the attorneys for the parties.